(169 App. Div. 622)

## In re SACHS.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ⬤⇒42—MISCONDUCT—WHAT CONSTITUTES.

    Where an attorney, who had undertaken to furnish good bonds, assured the magistrate that the bonds were all right, when in fact they were not, although the attorney was ignorant of the value of the bondsman's property, and the prisoners were thus allowed to escape, he was guilty of professional misconduct, and should be suspended.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ⬤⇒42.]

In the matter of the application for the disbarment of Moses A. Sachs, an attorney. On the report of the official referee on charges of professional misconduct. Respondent suspended for two years.

See, also, 158 App. Div. 935, 143 N. Y. Supp. 1142.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (John Neville Boyle, of New York City, of counsel), for petitioner.

George Gordon Battle, of New York City, for respondent.

PER CURIAM. The charges against this attorney were presented and prosecuted by the Association of the Bar of the City of New York. The principal charge is that the respondent deceived and misled a city magistrate with reference to the qualifications of bail in a criminal case. The transactions out of which the charges grew were as follows:

In March, 1910, Harris Rothstein, Jacob Goldberg, and Joseph Goldberg were arrested in the city of New York upon a charge of having committed burglary in the city of Boston, Mass. On March 26th the above-named defendants were arraigned before City Magistrate Barlow. The police officer who had arrested the prisoners informed the magistrate that the men had been arrested for the crime aforesaid and requested that they be remanded to await extradition proceedings. They were so remanded, and on March 28, 1910, were again arraigned before the magistrate, when the respondent appeared as their attorney. The question of bail having been raised, the magistrate announced that he would hold the prisoners to bail in the sum of $10,000 each. Respondent protested against the amount of bail required, whereupon the magistrate announced that he would reduce the bail to $5,000 each, if good bail was furnished.

The next day (March 29th) respondent presented one David A. Gluck as bondsman for Rothstein, and one Harry Seeherry as bondsman for the two Goldbergs. Gluck qualified as to the owner of a house and lot worth not less than $43,000, and Seeherry qualified as the owner of a house and lot worth $40,000. As matter of fact these properties were not worth more than $26,000 and $23,000, respectively, and were each incumbered to the extent of $20,000. It was conceded by the respondent on this proceeding that the property was not of the value represented. He insists, however, that he made no representation as to its value, and never professed to have any knowledge on the subject. His claim is that the magistrate accepted the bail bonds on the faith of the justification by the bondsmen, uninfluenced by any statement or representation on the part of respondent.

It appears that the bonds were filled out by the clerk of the court and were signed by the prisoners. A woman named Anna Gluck, who appears to have been not wholly unfamiliar with the furnishing of bail for prisoners, and who was sister of one of the bondsmen and a cousin of the other, stood by respondent with the deeds of the property offered as security and answered such questions as were put. Later on the evening of the same day the respondent, accompanied by Anna Gluck and the two bondsmen, appeared at the residence of the magistrate and tendered the bonds.

It will be recalled that the magistrate's offer to reduce the bail to $5,000 was conditioned upon the production of a "good bond," which respondent agreed to furnish. When respondent presented himself at the magistrate's house, the latter inquired of respondent, "Is this all right?" to which the respondent replied it was.

It is quite apparent that what was meant by the magistrate, and what respondent understood him to mean by the term "a good bond," was one which would really be sufficient security for the sum for which it was offered, and not a bond which falsely represented the value of the property offered as security, and when the magistrate asked respondent whether the bond offered was "all right," he undoubtedly meant to inquire and respondent must have understood him as meaning to obtain the respondent's assurance that the bond he offered was in fact a good one. He placed reliance upon respondent's honesty and good faith, and when he was told that the bond was a good one he was entitled to understand the respondent as asserting his knowledge, or at least his belief, that the bond was a "good" one. It may be that the magistrate was injudicious in placing reliance upon respondent's honor and truthfulness, but an explanation for his doing so may be found in the fact that, judging from the testimonials in his favor, respondent seems to have enjoyed at that time a good reputation with the judges with whom he was brought into contact.

It is no excuse for respondent to say that he had no knowledge of the value of the property offered as security. If that was the case, he should have so stated to the magistrate; but, when he undertook to vouch for the excellence of the bond, he in effect professed to have knowledge of the value and to certify that it was sufficient. Of course, if he had stated what he now says is the truth—that is, that he had no

knowledge as to the value of the property or the responsibility of the sureties, except what appeared on the face of their justification—the magistrate would have made further inquiry, and probably would not have accepted the bail. As it was he did accept respondent's assurance and set the prisoners at liberty, whereupon they promptly forfeited their bail and fled the jurisdiction. As is pertinently and correctly remarked by the official referee:

"It is just as wrong to assert that a particular statement is true, without knowing whether it is true or false, as it is to assert a thing to be a fact, when the person making the assertion knows it to be false; and this is especially true when made by an officer of the court to a judicial officer, who, in deciding what to do in a proceeding, is justified in depending upon and being governed by, more or less, the representations of counsel."

No more serious offense can be committed against the administration of justice than for an attorney to take advantage of the confidence of the court or judicial officer, and, by misrepresentation, to induce such court or officer to take judicial action. Every judge should be able to rely upon receiving a truthful and frank answer to any question put to an attorney regarding the facts of any case in which the attorney is engaged and is seeking action favorable to his client.

The respondent was clearly guilty of imposing upon the magistrate when he gave his personal assurance that the bonds offered were "all right," even if he were merely ignorant upon the subject, and did not know that they were "straw" bonds, given by professional bondsmen. This constituted professional misconduct of a very serious nature.

The respondent is therefore suspended from practice for two years, with leave to apply at the end of that period for reinstatement, upon showing compliance with the conditions to be recited in the order to be entered hereon.